GORMULLY & JEFFERY MFG. CO. v. WESTERN WHEEL WORKS et al.

(Circuit Court of Appeals, Seventh Circuit. February 11, 1898.)

No. 411.

1. PATENTS—INVENTION.

There is no invention in employing the well-known spiral spring to hold a bicycle brake from the tire by bending the spring around the axis of the brake, and having portions of it pressing on the head and the brake.

2. SAME—BICYCLE BRAKES.

The Jeffery patent, No. 312,473, for improvements in bicycles, is void as to claim 11, covering a spring brake, because of anticipation and lack of invention.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

This was a suit in equity by the Gormully & Jeffery Manufacturing Company against the Western Wheel Works and Adolph Schoeninger for alleged infringement of a patent for improvements in velocipedes or bicycles.

C. K. Offield, for appellant.

Arthur v. Briesen, for appellees.

Before WOODS and JENKINS, Circuit Judges, and BUNN, District Judge.

BUNN, District Judge. This suit is brought to restrain the defendants from infringing letters patent No. 312,473, dated February 17, 1885, issued to Thomas B. Jeffery, of Chicago, Ill., for the invention of a velocipede. The inventor, in his specifications, states that his invention relates to improvements in the variety of velocipedes termed bicycles. The invention is fully set forth in 13 distinct claims, of which only the eleventh is now in question. That claim is as follows:

"The wire brake spring bent spirally around the axis of the brake, having portions pressing on the head and brake, substantially as and for the purpose set forth."

This spring is further described in the specification as follows:

"The brake spring N, Figs. 15 and 16 (shown also under the brake in Fig. 1), is formed of wire coil in a spiral form around the point on which the brake is hinged, as shown, one extremity of the coil resting under the brake, and the other against the head, and is adjusted so that the shoe of the brake is pressed upward."

This is the contrivance which the complainant claims has been infringed:

"The wire brake spring bent spirally around the axis of the brake, having portions pressing on the head and brake."

The most obvious construction would be that the claim for invention is on the spiral wire spring, but this is wholly disclaimed by complainant in his testimony on his examination, as follows:

"C. Q. 136. Referring now to the eleventh claim of your patent in suit, No. 312,473, please state whether you claim to be the inventor of the form of spring used, irrespective of its application to the brake of a bicycle. A. No, I do not." "C. Q. 141. It was common, before your invention, was it not, to employ many kinds of springs to keep the brake shoe out of contact with the wheel of the bicycle? A. Yes, it was." "C. Q. 144. Did you invent the particular form of brake appearing in defendants' machine? A. No, I did not."

Jeffery also admits that he was not the first to produce a bicycle brake wherein the shoe was normally held out of contact with the tire of the wheel to be braked, and that he did not invent the particular form of brake made use of by him.

Counsel for complainant, in his argument and brief, expressly disclaims any invention for the brake spring employed, which the evidence shows has been in use for a long time, not only upon bicycles, but in sewing machines and other devices. Nor is it claimed that there is anything new in the application of a spring brake to a bicycle. That many and various forms of brakes were used upon bicycles previous to the issuing of complainant's patent is shown by the record, and especially by the following patents: Patent to William Hanlon, No. 86,834, issued February 9, 1869; patent to S. H. Sawhill, No. 93,751, issued August 17, 1869; patent to McClintock Young, No. 95,753, dated October 12, 1869; patent to James A. McKenzie, No.

242,212, dated May 31, 1881. But suppose the eleventh claim to be capable of another construction, the one claimed for it, to wit, a wire brake spring, allied with the head and brake of a bicycle as a part of the combination, with the limitation that the spring shall be bent spirally around the axis of the brake, and that portions of the brake spring shall press upon the head, and portions upon the brake, to produce the desired result. This certainly is a pretty broad claim for so simple a statement as that contained in the patent, to wit: "The wire brake spring bent spirally around the axis of the brake, having portions pressing on the head and brake." In its obvious reading the claim would not seem to suggest a combination patent, and it seems clear that the combination suggested is no more than an aggregation of parts producing no new or useful result. Great stress was laid in the oral argument upon the supposed fact that Jeffery was the first one to connect the brake spring and machinery to the head of the bicycle frame, as though, if he were, that settled the question of invention. It is evident, however, that that idea was not new with him, but was contained in previous patents. In the patent to Sawhill, issued in 1869,—15 years before complainant obtained his patent,—the brake is pivoted to the post or head of the bicycle in front of the rider. It so appears in the drawing; and the specification is as follows:

"A brake, H, is pivoted to the post, C, and has an upward projecting handle. h, which is, by a spring, i, drawn forward to hold the brake off the front wheel. A simple motion of the rider will apply the brake."

The patent to Hanlon, issued also in 1869, shows a brake attached to the post or head of the bicycle in front of the rider, and the specification descriptive of its operation by the hands applies well to the modern brake device, viz.:

"It will be seen that by the application of the brake to the forward driving wheel, and the employment of a mechanism for operating it, which is manipulated by the hands of the rider, the brake is rendered more effective, and the carriage is more completely under the control of the rider, since a mere motion of the hands manipulates the brake mechanism, and he is not obliged to change his position, or assume any particular attitude while braking up."

The little differences between the application of those brakes and that of complainant do not seem to be important so far as the question of novelty is concerned.

But suppose the complainant is not anticipated in his claim that he is the first to make an alliance of the spiral brake spring and the head of the bicycle, does it follow that any invention is required to suggest such a combination? Manifestly not. It would not even require mechanical skill, but only a moderate degree of good sense and judgment. It is evident to the most ordinary capacity that the brake attachment should be connected to some stationary and permanent portion of the bicycle, and in a position where it can be seen by the rider, and operated by the hand. Besides that the hand is a much more capable and facile instrument than the feet for such a purpose, the latter are both quite constantly required for the much more necessary and important purpose of propelling the machine. Though perhaps not in proof, it is matter of common knowledge that, while every bicycle has two pedals to be operated by the feet, hardly

one in a hundred has any brake attachment of any sort, and that manufacturers and salesmen do not provide them unless specially ordered.    Both feet are commonly required to move the wheel forward. Both hands are used to operate the handle bars, which guide and give direction to the wheel, though not in the same sense that the feet are required for the propelling power; as, though both hands are commonly used, the wheel may be guided with one, leaving the other hand to operate the brake, or one hand may very well guide the wheel and operate the ·brake, at the same time, leaving the other hand free. When a brake is used, then, the most obvious place to put it would seem to be in front of the rider, where it may be readily seen without turning the head, and be operated by the hand.    The hands, of course, are usually upon the handle bars in front of the rider in the immediate vicinity of the main post or head of the wheel, to which the handle bars are attached.    What could be more obvious than to attach the brake to this post or head, or the handle bars in close proximity to it?    Brakes have sometimes been attached to the reach or horizontal bar of the frame under the rider, but the usual manner, in accordance with the obvious considerations before mentioned, is to attach it to the head or post in front of the rider, where it may, with most convenience, be manipulated, and this the evidence shows has been done for many years previous to complainant's patent.    The conclusions reached by the court as to the merits of the complainant's claim accord very well with the general summing up by the defendants' expert in his testimony, as follows:

"The alleged invention of Jeffery's eleventh claim is, therefore, narrowed down to the application of an old form of spring in an old manner to a bicycle brake, to press this brake off from the wheel just as it had previously been pressed off by other springs differently applied.    In view of the great number and variety of constructions of springs known in the mechanical arts for many years past, and in view of the common adaptability of springs bent from wire, or strips or plates of metal, for exerting pressure in various directions upon various movable parts used in mechanics, and in view also of the common use of springs of various kinds and variously applied for pressing bicycle brakes away from the wheels, it seems to me that the application of any old construction of spring to a bicycle brake, in the same manner and to the same effect that it was before applied in its previous locations, and to the attainment of no new effect upon the brake, amounted merely to an exercise of good judgment on the part of a mechanic in selecting from among the previously known springs the one best adapted to his purpose, and did not involve any of that ingenuity characteristic of an invention."

The decree of the circuit court is affirmed.